NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**TIMOTHY E. BAKER,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

_____

2021-1898

_____

Petition for review of the Merit Systems Protection Board in No. SF-0752-21-0024-I-1.

_____

Decided:  October 7, 2021

_____

TIMOTHY E. BAKER, Bremerton, WA, pro se.

KYLE SHANE BECKRICH, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.

_____

Before NEWMAN, REYNA, and CHEN, *Circuit Judges.*

PER CURIAM.

Timothy E. Baker appeals the decision of the Merit Systems Protection Board (Board) affirming the decision of the Department of the Navy (Navy) to remove Mr. Baker from the position of Machinist, WG-3414. *See Baker v. Dep't. of the Navy*, No. SF-0752-21-0024-I-1, 2021 WL 533572 (M.S.P.B. Feb. 10, 2021) (*Board Decision*). Because the Board's decision is supported by substantial evidence, we *affirm*.

## BACKGROUND

On May 20, 2020 a naval officer was informed of "an individual who was using an unknown substance while in their vehicle." Suppl. App.[1] 18. Upon investigation, the officer observed Mr. Baker smoking in a manner inconsistent with the use of tobacco or marijuana. *Id.* The officer reported the incident to Mr. Baker's supervisor. *Id.* In his written report, the officer noted that "this behavior had been consistently observed prior to this, both prior to shift and during the lunch break for the shift." *Id.* As a result, Mr. Baker's superintendent authorized a test for illegal drug use based on reasonable suspicion. *Board Decision* at 2 (citing Initial Appeal File and hearing testimony); *see also* Suppl. App. 20 (describing the reason for the drug test as "reasonable suspicion/cause"). On May 28, 2020, Mr. Baker tested positive for amphetamines and methamphetamines. Suppl. App. 19–20. On June 1, 2020, the results were confirmed by gas chromatography-mass spectroscopy, which revealed amphetamine levels of 1,021 nanograms per milliliter and methamphetamine levels of more than 2000 nanograms per milliliter. Suppl. App. 19. These concentrations are, respectively, more than four and

---

[1]    "Suppl. App." citations are to the appendix filed concurrently with the government's responsive brief.

eight times the cutoff levels that trigger a positive drug test result.  29 C.F.R. § 40.87.

The Medical Review Officer, Dr. Robert Fierro, reviewed the test results and discussed those results with Mr. Baker.  *Board Decision* at 3.  During that discussion, Mr. Baker mentioned that he was taking dietary supplements, but provided no further detail.  *Id.*  In his report, Dr. Fierro concluded that there was "[n]o legitimate medical explanation" for the positive test results.  Suppl. App. 20.

On June 10, 2020, Mr. Baker was notified he would be suspended from access to classified information and assignment to a sensitive position because of his positive drug test.  *Board Decision* at 3.  Following that notice, Mr. Baker met with his supervisor and presented expired prescription medications as a justification for the positive drug test.  *Id.*  During that meeting, Mr. Baker made no representation about his use of methamphetamines or weight loss supplements.  *Id.*  The Navy subsequently suspended Mr. Baker indefinitely due to his loss of security clearance.  *Id.* at 4.

On August 11, 2020 the Navy issued Mr. Baker a notice of proposed removal based on his positive drug test and Executive Order 12564, which requires federal employees to refrain from using illegal drugs on or off duty.  *Id.*  Mr. Baker did not respond to the notice and his removal became effective on September 15, 2020.  *Id.*

On October 9, 2020, Mr. Baker appealed his removal before the Board.  *Id.* at 1.  The Board considered documents and testimony reciting the foregoing as well as articles theorizing that the ingestion of dietary supplements could result in a positive drug test, the results of at-home drug tests, and images of dietary supplements that Mr. Baker submitted.  *Board Decision* at 5–6.  The Board affirmed Mr. Baker's removal because the Navy proved, by a preponderance of the evidence, "the charge of drug use

(methamphetamines)," that there was "a nexus between the misconduct and the efficiency of the service," and that "the penalty of removal did not exceed the tolerable limits of reasonableness." *Id.* at 7.  In particular, the Board was persuaded by Dr. Fierro's testimony that no prescribed medication could cause a positive result at the level of Mr. Baker's drug test.  *Id.* at 6.

On appeal, Mr. Baker contends that the Board failed to properly consider his submitted articles, the results of at-home drug tests, and photographs of dietary supplements. Appellant's Br. 1.  Mr. Baker requests reinstatement.  *Id.* at 2.

## DISCUSSION

This court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) and may review the final decision of the Board. Our authority to review Board decisions is limited.  "[W]e must affirm the Board's decision unless we find it to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been following; or (3) unsupported by substantial evidence." *See, e.g., Parrott v. Merit Sys. Prot. Bd.*, 519 F.3d 1328, 1334 (Fed. Cir. 2008) (quoting 5 U.S.C. § 7703(c)).

Mr. Baker's appeal focuses only on whether the Navy had proved the charge of drug use.[2] Appellant's Br. 1 ("The name or [i]dentity [of the dietary supplements] was in the pictures I sent with my evidence I sent the judge for the

---

[2]    Mr. Baker does not challenge the Board's finding that there was "a nexus between the misconduct and the efficiency of service" or the Board's finding that "the penalty of removal did not exceed the tolerable limits of reasonableness." *Board Decision* at 7.  Nor does Mr. Baker identify any flaw in the collection or testing procedure for the Navy's drug test.

court proceedings."); *id.* ("I told the lab, doctor, and security from the start what I have been taking including the diet supplements, and that they could test them and I feel if they had a way to test them not knowing for sure why the positive outcome."). Mr. Baker argues that if the Board properly considered the articles, at-home drug tests, and photographs he submitted, the Board would not have upheld his removal.

We agree with the government that substantial evidence supports the Board's decision. Appellee's Br. 10. The record demonstrates that the Board fully considered the Navy's drug test, testimony of medical professionals, Mr. Baker's testimony, and the evidence Mr. Baker submitted and reasonably found "[A]ppellant's explanation for his reasonable suspicion positive drug test [to be] too vague and unspecific to be credible." *Board Decision* at 6. Moreover, we determine that the Board did not err in relying on Dr. Fierro's conclusions that neither prescription medications nor dietary supplements could cause the levels of amphetamine and methamphetamine documented in Mr. Baker's test results. *Id.* at 3, 6. We considered Mr. Baker's other arguments and do not find them persuasive.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Board.

## **AFFIRMED**

### COSTS

No costs.